**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lorenza BENEFIELD, Sr.,**
**Defendant–Appellant.**

**No. 89–7081**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 6, 1989.

Russelle L. Hubbard, Pinson, Ala., for defendant-appellant.

Frank W. Donaldson, U.S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, JOHNSON and CLARK, Circuit Judges.

**CLARK, Circuit Judge:**

On October 27, 1988, the Grand Jury for the Northern District of Alabama indicted Lorenza Benefield, Sr. on one count of unlawfully purchasing over $100 of food stamp coupons issued by the United States Department of Agriculture (U.S.D.A.) in violation of 7 U.S.C. 2024(b). On January 9–11, 1989, Benefield was tried before the Honorable E.B. Haltom, United States District Judge for the Northern District of Alabama. He was convicted by a jury, and this appeal followed.

Benefield alleges multiple errors during his trial. First, he argues that the sentence imposed by the court constitutes cruel and unusual punishment in violation of the Eighth Amendment. Second, the trial court erred in sentencing him on the basis of an inaccurate presentence investigation report. Third, the court improperly limited the number of character witnesses to five. Fourth, the court improperly intruded into the province of the jury in questioning the witnesses. Fifth, the evidence presented at trial was insufficient to prove that the defendant was the one who purchased the food stamps. And finally, sixth, the court erred in admitting into evidence a food stamp redemption card. Because we find each of these arguments without merit, we affirm the judgment of the district court.

## I. FACTS AND PRIOR PROCEEDINGS

In 1987 the Inspector General of U.S.D.A. received reports that stores in the Bessemer, Alabama area were purchasing food stamp coupons at a price less than the in face value.[1] The Inspector General's Office then assigned Special Agent Larry Scarlett to Bessemer to investigate these reports. Scarlett did not disclose to Bessemer residents who his employer was. Scarlett recruited Larry Knight, a 31-year-old substance abuser who was out of work and in need of money. Knight was to introduce Scarlett to people interested in purchasing food stamps. Over the next few months Knight arranged ten food stamp transactions for Scarlett for which he received a "cut" of the profits. One of

---

**1.** This practice is commonly known as "discounting."

the transactions was arranged with the defendant.

On November 4, 1987, Knight directed Agent Scarlett to the R.M.B. Convenience Store on the south side of Bessemer. R.M.B. was co-owned by the defendant. Knight chose R.M.B. because he had heard rumors that the store would purchase food stamps. In route to the store Scarlett gave Knight $300 in food stamp coupons. Knight was to charge $150 for the food stamps. The two arrived at the store at approximately ten o'clock that morning.

At trial, Knight testified that he and Scarlett both went into the store. Scarlett positioned himself within a few feet of the cash register. Knight approached the cashier and offered to sell him the food stamps. Since there was a customer in the store, the cashier directed Knight to wait in the back of the store until the customer left. Scarlett remained near the register. After the customer left, Knight returned to the cashier and handed him the coupons Scarlett had given him in the car. The cashier then walked around to the cash register, deposited the coupons in it, and took out $150 which he gave to Knight.

Knight and Scarlett then left the store. Knight then gave Scarlett the money he had received from the cashier. Scarlett gave Knight $20 as his cut. Scarlett then drove Knight home.

At trial both Knight and Scarlett identified Benefield as the cashier who had purchased the food stamps from Knight. Benefield testified in his own behalf. He denied that he purchased the food stamps from Knight or that he had ever met him prior to the trial.

During cross-examination of Benefield the government produced a copy of a food stamp redemption card. The card indicated that on November 4, 1987, R.M.B. redeemed $355 in food stamps at a local bank. Benefield testified that the information contained on the card was correct. The government then successfully moved to admit the redemption card into evidence over the objection of the defendant.

As part of his defense, Benefield sought to have ten acquaintances testify for him

as character witnesses. The government then moved to limit the number of character witnesses. The court granted the motion and limited Benefield to five character witnesses.

At the close of evidence, the defendant moved for judgement of acquittal alleging that the government failed to present evidence sufficient to show that the defendant purchased the food stamps. The court denied the motion. The jury found the defendant guilty.

After the verdict the court conducted a sentencing hearing. At the hearing the government introduced a letter from James M. Sanders of the Food and Nutrition Service of the Department of Agriculture. Sanders had written the letter to confirm a telephone conversation he had with Benefield advising him that the Department had received information that R.M.B. was purchasing food stamps for cash and warning him that doing so was illegal. Sanders sent the letter return receipt requested, and the receipt was signed by a former employee of Benefield. Benefield denied both receiving the letter and having the conversation with Sanders. Nevertheless, the court found this testimony unconvincing. The court then sentenced Benefield to serve five years in prison, fined him $1000, and ordered to pay a fifty dollar assessment. The court suspended four and one-half years of the sentence on the condition that Benefield (1) contribute 192 hours of community service each year of the probation; (2) pay the fine and assessment within the first six months of probation; and (3) make restitution to the government in the amount of $150. Finally, the court declared Benefield ineligible for participation in the food stamp program for the next two years.

## II. DISCUSSION

### A. Eighth Amendment Claim

Benefield's first contention concerns his sentence. He argues that the sentence he received is disproportionate to the offense he committed and was therefore cruel and unusual punishment prohibited by

the Eighth Amendment of the United States Constitution. Appellant's Brief at 12. In support of this claim Benefield relies on two opinions of the Supreme Court—*Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) and *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

Benefield calls to our attention the *Robinson* Court's notation that "[e]ven one day in prison would be cruel and unusual punishment for the 'crime' of having a common cold." 370 U.S. at 667, 82 S.Ct. at 1421. Robinson had been convicted of the "crime" of being an addict. In striking his sentence as cruel and unusual the Court focused on Robinson's "status" as an addict as the reason for his punishment. *Id.* at 666, 82 S.Ct. at 1420. Unlike Robinson, Benefield's punishment stems from his conduct—the illegal purchase of food stamps. The considerations that make any incarceration unconstitutional when a statute punishes a defendant for his status are not applicable when the government seeks to punish a person's actions.

*Solem v. Helm* provides more support for Benefield's claim. The *Solem* Court overturned as a violation of the Eighth Amendment sentences imposed under a statute requiring the imposition of a life sentence without parole for conviction of a seventh nonviolent felony. 463 U.S. at 296–303, 103 S.Ct. at 3012–15.

When reviewing a sentence under *Solem* we are required to give "substantial deference" to the range of penalties chosen by Congress and the actual sentence imposed by the trial court. 463 U.S. at 290, 103 S.Ct. at 3009. Even though *Solem* allows our review of Benefield's sentence, that review is limited—"[o]utside the context of capital punishment, *successful* challenges to the proportionality of sentences [are] exceedingly rare." *Id.* at 289, 103 S.Ct. at 3009. The reason we accord substantial deference to the determinations made by Congress and the district court is because the responsibility for making sentencing determinations is not with us. The *Solem* Court was careful to note that Congress "necessarily possesses" broad authority to determine "the types and limits of punishments for crimes." *Id.* at 290, 103 S.Ct. at 3009. Our role is not to "substitute [our] judgement for that of the sentencing court." *Id.* at n. 16. Finally, the Court indicated that the substantial deference standard of review dictates that a "reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not disproportionate." *Id.* The circumstances of this case lead us to conclude that this is not a case requiring extended analysis.

The punishment Benefield received is far less than the maximum punishment for the violation he committed. In fact, it is more consistent with the punishment imposed for misdemeanor violations of the act.[2] The particular circumstances of the crime also add to the reasonability of the penalty.[3] Our examination of other reported sentences in these types of cases reveal other sentences comparable to the one the defendant received.[4] Benefield's sentence is not

---

**2.** Section 2024(b) provides:
[if the food stamp coupons acquired] are of a value of less than $100, [the person who illegally acquires the coupons] shall be guilty of a misdemeanor, and, upon first conviction thereof, shall be fined not more than $1,000 or imprisoned for not more than one year, or both....
7 U.S.C. § 2024(b)(1).

**3.** In determining the severity of the offense and the harshness of the sentence, this court should take into account facts and circumstances surrounding the offense and defendant. Although Benefield presented character witnesses that testified favorably, and had no previous convictions, the court found that he both lied under oath and violated section 2024 after being

warned his conduct was illegal. These factors can appropriately increase the severity of the punishment even when we take into account the defendant's lack of a prior criminal record. *Cf. United States v. Grayson*, 438 U.S. 41, 51, 98 S.Ct. 2610, 2616, 57 L.Ed.2d 582 (1978) (appropriate for court to take defendant's truthfulness into account in determining sentence).

**4.** *See e.g., United States v. Salazar*, 720 F.2d 1482, 1483–84 (10th Cir.1983) (district court sentenced defendant to one year in prison for purchasing $325 in food stamps and three years of probation for purchasing another $325 worth on another occasion), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985); *United States v. Marvin*, 687 F.2d 1221, 1223–24 (8th

"unusual" when compared with the sentences received by other defendants convicted in the federal courts.

Examination of Benefield's sentence leads us to conclude that, as a matter of constitutional law, the sentence is not disproportionate to the offense. The fact that a sentence is harsh does not mean that it is unconstitutional. This is not one of the "exceedingly rare" cases where the sentence is disproportionate to the offense committed.

### B. Due Process Claims/Fair Trial Claims

#### 1. *Factual Inaccuracies in the Presentence Investigation Report.*

■ As his next assignment of error, Benefield alleges that in deciding his sentence, the district court took into account disputed facts in the presentence investigation report (PSI) that the government failed to prove by a preponderance of evidence. Appellant's Brief at 16. Specifically, the defendant challenges the court's conclusion that Benefield had received the warning letter from the Department of Agriculture. *Id.* at 17. After considering the record of the sentencing proceeding, we find this charge without merit.

In *United States v. Restrepo,* 832 F.2d 146, 148 (11th Cir.1987), this court held that disputed facts in a sentencing report must be shown "by some reliable proof by which the trial court can conclude that it is not unlikely that the government's statements are true." The government easily met this burden. As the government notes, the question of whether the defendant received the letter is not the issue. The issue is whether Benefield received a warning from the Department of Agriculture. Although the defendant denies receiving both the

telephone call and the letter, an employee of Benefield signed a receipt for the letter. In addition, the letter, since it was written as a confirmation of the telephone call, provides evidence that the call was actually received.[5] The only contrary evidence is the defendant's testimony which the district court did not find credible. We therefore find that the evidence was sufficient for the district court to conclude that it is not unlikely that the government's statements are true.

#### 2. *Limitation on the Number of Character Witnesses.*

■ Benefield also argues that the district court erred in granting the government's motion to limit the number of character witnesses. Benefield originally sought to have ten character witnesses, but in response to the government's motion, the court limited the number to five. Benefield urges us to adopt the practice of both the state courts in this circuit and the Fourth Circuit and hold that it is an abuse of discretion to limit the number of character witnesses.

The Supreme Court has noted that the district courts are "invest[ed] with discretion to limit the number of [character] witnesses and to control cross-examination." *Michelson v. United States,* 335 U.S. 469, 480, 69 S.Ct. 213, 220–21, 93 L.Ed. 168 (1948). Furthermore, we should overturn these determinations "rarely and only on a clear showing of prejudicial abuse of discretion." *Id.* Benefield alleges that the general rule is modified when the defendant's credibility and reputation are of "great significance." Appellant's Brief at 19 (citing *United States v. Escamilla,* 467 F.2d 341, 348–49 (4th Cir.1972)).

Cir.1982) (district court sentenced defendant to one year sentence with all but 90 days suspended and $5000 fine for purchase of $500 in food stamps), *cert. denied,* 460 U.S. 1081, 103 S.Ct. 1768, 76 L.Ed.2d 342 (1985); *United States v. French,* 683 F.2d 1189 (8th Cir.) (district court sentenced defendant to three concurrent five year sentences and $3000 fine for conviction on three count indictment alleging purchase of $150, $150, and $500 of food stamps on three

separate occasions), *cert. denied,* 459 U.S. 972, 103 S.Ct. 304, 74 L.Ed.2d 284 (1982).

5. The letter began: "Mr. Benefield, this is to confirm my telephone conversation with *you* on September 11, 1986." (R2:237) (emphasis added). Even if Benefield did not receive the letter, the fact that the letter was written certainly provides "reliable proof" that the telephone conversation occurred.

The significance of the defendant's character in this case is that his testimony directly contradicts the government's case against him. Credibility determinations such as this are involved in most every trial. The instant case is indistinguishable from *Michelson* where the court noted that "determination of the [case] turned on whether the jury should believe the [federal revenue] agent or the accused." 335 U.S. at 471, 69 S.Ct. at 216, *see also United States v. Johnson*, 730 F.2d 683, 688 (11th Cir.) (affirming trial court decision to limit character witnesses to three when district court determination that fourth witness would be cumulative was not abuse of discretion), *cert. denied*, 469 U.S. 867, 105 S.Ct. 211, 83 L.Ed.2d 142 (1984).

In this case the defendant conceded at trial that he could sufficiently present his case with six character witnesses. (R2:112–15) The defendant has not—either at trial or in this court—explained what the sixth witness would have added to the defendant's case. After reviewing the record, we find no abuse of discretion.

### 3. *Improper Questioning by the Court During the Trial.*

In his fourth assignment of error, Benefield alleges that the questioning of him by the court denied him due process and a fair trial as guaranteed by the Fifth and Sixth Amendments. Specifically, Benefield points to two instances where the court's actions are alleged to have interfered with the jury's ability to determine "the credibility of the witnesses at trial and who should be believed." Appellant's Brief at 22.

■ While the court can interrogate witnesses to clarify testimony and insure that a case is tried fairly, *United States v. Block*, 755 F.2d 770, 775 (11th Cir.1985), the judge may not *repeatedly* interject himself into the proceedings when the attorneys are conducting their case in a competent manner. *Id.* We have examined the record and conclude that the court's brief questions cannot be classified as "so numerous or egregious as to require reversal." *Id.* at 776. In addition, any supposed

prejudice caused by the brief questioning by the court was corrected by its charge to the jury:

Moreover, any questions that I have asked of witnesses in this case are to be given no more significance or importance than the questions that are asked by the lawyers.

And if I have made any comment on the evidence in this case, I instruct you now to disregard it. Because you are the sole and exclusive finders of fact in this case. And the findings of fact is your exclusive province. I give you the law, but you decide the facts.

(R2:212) Thus, looking at the record as a whole, we are unable to find any intervention by the court requiring reversal.

### C. Sufficiency of the Evidence

■ Benefield next argues that the district court erred in refusing to grant a motion for judgement of acquittal. He argues that the government's evidence was insufficient to prove that he purchased the food stamps. We review this claim by asking whether "a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B) (en banc),[6] *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). In conducting this review, we consider the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

The record reveals ample evidence that would allow a reasonable jury to conclude that Benefield purchased the food stamps. The two witnesses testified that it was Benefield who had purchased the food stamps. Although one of the witnesses, Larry Knight, was at the time of the purchase addicted to cocaine and marijuana, the other witness, Larry Scarlett, had been employed by the U.S.D.A. as a special investigator for approximately five years at the time he witnessed the transaction. Both of the witnesses were present at the time of the purchase. Although the defendant testified that he had never previously

---

**6.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), this court adopted as binding precedent all of the decisions of Unit B of the former Fifth Circuit.

met Scarlett or Knight and that he had not purchased food stamps from Knight, the jury chose not to believe him. After an examination of the record we cannot conclude that a reasonable jury could not have found Benefield guilty beyond a reasonable doubt.

### D. Admission of the Food Stamp Redemption Card

■ Finally, Benefield alleges that the district court improperly admitted into evidence a food stamp redemption card that purported to show a redemption of food stamp coupons for cash. Benefield argues that the redemption card constituted hearsay not within an exception which should have been excluded. Appellant's brief at 24–25.

Without deciding whether Benefield's claim that the card constituted inadmissible hearsay is correct, we find that any error committed by the district court was harmless. The food stamp redemption card was introduced to show that immediately after the alleged purchase of food stamps, someone from RMB had deposited $355 in food stamp coupons—an amount greater than the $300 alleged to have been illegally purchased there. Benefield admitted that this was true.[7] Thus, since the substance of the redemption card was before the jury, any error in admitting it was harmless. *See United States v. Hay*, 527 F.2d 990, 997 (5th Cir.)[8] (any error in admitting bank records made harmless by defendant's admission of facts contained in record), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1666, 48 L.Ed.2d 176 (1975).

For the foregoing reasons, the conviction is AFFIRMED.

---

7. On cross examination of Benefield by Assistant U.S. Attorney Simpson, the following exchange occurred:

Q Is [the food stamp redemption card] a true and accurate account of what your store did at the bank with respect to coupons, on or about the 4th day of November, 1987?
A That's what we deposited. Yes.

8. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (in banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.