[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 8, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-13359

_____

D. C. Docket No. 02-00355-CR-T-17-MSS

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus

JESSE WRIGHT, JR.,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(December 8, 2004)**

Before EDMONDSON, Chief Judge,  PRYOR and FAY, Circuit Judges.

FAY, Circuit Judge:

A jury convicted appellant Jesse Wright of one count of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924. The government alleged that Wright was in knowing possession of the weapon when Mulberry, Florida, police officers arrested him for driving under the influence. As part of its case, the government used Wright's resistance to arrest as evidence of knowing possession. The defendant challenges his conviction on several grounds: (1) the government did not present sufficient evidence that Wright knowingly possessed the firearm; (2) the district court dispensed with its neutral role by assisting the government in the development of its case; (3) the district court admitted evidence of the Defendant's uncharged resistance to arrest and instructed the jury that such evidence could be considered as consciousness of guilt; (4) the district court engaged in ex parte communications with the jury; and (5) that 18 U.S.C. § 922(g) is unconstitutional. While we will address each ground in turn, we disagree with the defendant, and affirm his conviction.

## I. Facts

On March 24, 2002, Officer Kenneth Knox, of the Mulberry, Florida, police department stopped Jesse Wright for speeding and weaving through traffic lanes. Officer Knox approached Wright's vehicle and asked to see Wright's license and registration. Wright complied with the officer's request, and during the exchange, the

2

officer detected alcohol on Wright's breath. Officer Knox administered the standard field sobriety tests, which Wright failed, and determined that Wright was intoxicated.

Officer Knox then proceeded to place Wright under arrest, and instructed Wright to put his hands behind his back. When Wright refused, a struggle ensued. Henry Floyd, a sheriff's office employee who arrived on the scene during the sobriety tests, attempted to assist Officer Knox, but the struggle continued and the three men fell to the ground. As Wright still resisted Officer Knox radioed for assistance, and Corporal Cantrell responded to the scene. With Cantrell's aid, the officers got Wright under control.

With Wright in custody, the officers conducted an inventory search of Wright's vehicle. Under the front seat, they found a nine-millimeter Smith and Wesson firearm wrapped in a bandana, alongside a cold open bottle of beer. The trunk of the vehicle contained a cooler packed with ice and more of the same beer. The officers then transported Wright to the jail. After his arrest, although the precise timing is unclear from the record, Wright commented that the officers were lucky he had not made it back to his car because "it would have been lights out," and Wright proceeded to make a gesture with his hand in the shape of a pistol.

Before trial, Wright agreed to his status as a convicted felon who had not had his right to possess a firearm or ammunition restored. In addition, Wright filed a

motion in limine requesting the district court to exclude evidence concerning his resistance to arrest and resulting charges of battery on a law enforcement officer and resisting an officer with violence. The prosecutors dropped the charges relating to resisting arrest and battery on a law enforcement officer, but maintained that the evidence of that conduct was relevant and "inextricably intertwined" with the charged offense of possession of a firearm by a convicted felon. Furthermore, the government sought to use the resisting arrest evidence to establish Wright's consciousness of guilt. The district court agreed with both the admission and use of the evidence.

During the trial, Officer Knox testified for the United States. On redirect examination, the district court informed the parties at a sidebar conference that Knox had yet to identify Wright. Wright's counsel objected to the court's comment and moved for a mistrial on grounds that the district judge "had gone beyond being neutral magistrate ...in pointing out a lack of the Government's case." The district court denied the motion and allowed the Government to ask Knox to identify Wright. Wright renewed his motion for a mistrial, which the district court denied.

Corporal Cantrell then took the stand for the Government and described both Wright's comment after arrest about it being "lights out" had he been able to get to his vehicle and Wright's accompanying hand gesture. As Cantrell testified, the district court itself questioned him about Wright's gesture. At sidebar, Wright

4

objected, arguing once again that the district judge was assisting the United States in trying its case. The district court instructed the prosecutor to develop more details about the gesture from Cantrell, and also denied Wright's motion for a mistrial. The prosecution then proceeded to delve further into Wright's gesture.

The defense case consisted primarily of testimony by Wright's father. According to the father, the firearm belonged to him, and was left in the vehicle when he borrowed his son's car the day of the arrest. Wright's mother also testified, stating that she had dropped her husband off at her son's house on March 24, 2002, the day of the arrest. At the conclusion of evidence Wright renewed his motion for a judgment of acquittal, which the district court denied.

After the close of evidence, Wright objected to an instruction on resisting arrest because it involved a charge which the government had dropped. Wright further objected to the instruction because it was not part of pattern jury instructions. The government replied that this Court upheld a similar instruction in which the jury could consider intentional flight as indication of guilt. The prosecution explained that the jury needed the opportunity to make reasonable inferences because the government premised much of its case on circumstantial evidence. The district court approved a modified version of the requested charge, and allowed the jury to infer

Wright's consciousness of guilt based upon his resistance.[1]

After instructing the jury, the district court excused all parties until further notice. Once the jury began its deliberations, it asked to be permitted to view the firearm. Additionally, the jury sought either the firearm's dimensions or a ruler to measure the gun. The district court allowed the jury to view the firearm and provided it with a ruler. The district court did not inform the parties of its communication with the jury until the next morning. Wright objected to the district court's actions, arguing that the ruler had not been admitted into evidence, and that the jury should have been instructed to use its own abilities. The district court overruled the objection, and the jury subsequently convicted the defendant. Wright was sentenced to 120 months imprisonment.

## II. Sufficiency of the Evidence

---

[1]Specifically, the instruction read:

The conduct of a person at the time of his arrest is not, of course, sufficient in itself to establish the guilt of that person, but is a fact which, if proved, may be considered by the jury in light of all the other evidence in the case in determining the guilt or innocence of that person.

You should consider that there may be reasons for the conduct by the Defendant that are fully consistent with innocence. A feeling of guilt does not necessarily reflect actual guilt of a crime.

If you determine that the conduct of the Defendant showed a consciousness of guilt on the Defendant's part, the weight, if any, to be attached to that evidence is also a matter exclusively for you as a jury to determine.

This Court reviews sufficiency of the evidence de novo, "view[ing] the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." United States v. Martinez, 83 F.3d 371, 374 (11th Cir. 1996). We will not overturn a conviction on the grounds of insufficient evidence "unless no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Christo, 129 F.3d 578, 579 (11th Cir. 1997). Finally, our Court must accept a jury's inferences and determinations of witness credibility. United States v. Glinton, 154 F.3d 1245, 1258 (11th Cir. 1998).

Under 18 U.S.C. § 922(g)(1), it is unlawful for a felon to possess a firearm. Section 922(g)(1) required the government to prove "three distinct elements:" (1) that Wright was a convicted felon; (2) that Wright knew he was in possession of a firearm; and (3) that the firearm affected or was in interstate commerce. United States v. Jernigan, 341 F.3d 1273, 1279 (11th Cir. 2003). Wright agreed to his status as a convicted felon, and takes issue only with the second element - knowing possession. The government need not prove actual possession in order to fulfill the "knowing" requirement of § 922(g)(1). Rather, it may be shown through constructive possession. See United States v. Sweeting, 933 F.2d 962, 965 (11th Cir. 1991). The firearm need not be on or near the defendant's person in order to amount to knowing possession.

7

See United States v. Winchester, 916 F.2d 601, 603-04 (11th Cir.1990) (holding firearm found behind couch when defendant not home sufficient for conviction under 18 U.S.C. § 922(g)). Moreover, we have held in United States v. Gates, that a defendant had knowing possession of a firearm when driving a car with the weapon beneath the driver's seat. 967 F.2d 497, 499 (11th Cir. 1992).

In the instant case, a reasonable jury could believe beyond a reasonable doubt that Wright was in knowing possession of the firearm. United States v. Billue, 994 F.2d 1562, 1565 (11th Cir.1993). Possession can be shown by circumstantial as well as direct evidence. United States v. Montes-Cardenas, 746 F.2d 771, 778 (11th Cir.1984); United States v. Smith, 591 F.2d 1105, 1107 (5th Cir.1979).[2] Possession can be either actual or constructive. Smith, 591 F.2d at 1107. "In order to establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself ... or the vehicle in which contraband is concealed." Smith 591 F.2d at 1107.

There is no dispute that there was a weapon in the vehicle. Officers found the firearm under Wright's seat, next to an open bottle of cold beer. Wright owned the

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

automobile in which the firearm was carried. Wright had been operating the car when the officers pulled him over. Evidence showed Wright was driving under the influence and once officers attempted to arrest him, Wright aggressively resisted, which could indicate that Wright only resisted after he realized officers would impound the car and discover the gun. See United States v. Borders, 693 F.2d 1318, 1324 (11th Cir. 1982) (admitting defendant's resistance to arrest as evidence of consciousness of guilt). Finally, when Wright commented that it would be "lights out" if he had made it back to the vehicle and formed a pistol with his hand, a jury could infer that Wright knew of the firearm and was prepared to use it. See United States v. Crawford, 906 F.2d 1531 (11th Cir. 1990) (upholding conviction for possession of unregistered firearm where defendant disclaimed knowledge of grenade in his vehicle). The fact that Wright's father testified that the gun belonged to him and that he accidentally left it in his son's vehicle does not detract from the evidence. Assessing the credibility of one witness is within the jury's exclusive province, and all reasonable inferences and credibility choices must be in favor of the jury verdict. United States v. Pruitt, 763 F.2d 1256, 1263- 64 (11th Cir.), cert. denied, 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed.2d 896 (1985). Based on the jury's verdict, it is evident that it did not give much credence to the testimony of Wright's father. Therefore, we hold that the government presented sufficient evidence to convict Wright under 18

U.S.C. § 922(g)(1).

### III. District Court Bias

Wright also contends that the district court became an advocate for the government when it: (1) informed the prosecution that Officer Knox needed to identify Wright and (2) directed Officer Cantrell to describe Wright's hand gesture in detail for the record. This Court reviews a district court's denial of a motion for a mistrial under the abuse of discretion standard. United States v. Ettinger, 344 F.3d 1149, 1161 (11th Cir. 2003). Wright also argues that our Court should review the district court's ruling with "added scrutiny" because the court itself caused the mistrial motion. Wright has provided no authority to support this argument, and it is rejected. Wright only would be "entitled to a grant of mistrial upon a showing of substantial prejudice." Id.

While we are mindful that a defendant is entitled to an impartial judge because of the weight juries are likely to place with the court's opinion, it is also "well settled that a federal district judge is not relegated to complete silence and inaction during the course of criminal jury trial." United States v. Cox, 664 F.2d 257, 259 (11th Cir.1981) (quoting Bursten v. United States, 395 F.2d 976, 982 (5th Cir. 1968)). Additionally, the district court has discretion to question witnesses. See Fed.R. Evid. 614(b) ("The [trial] court may interrogate witnesses"). When the judge's conduct

10

"strays from neutrality," however, then the defendant has been denied a constitutionally fair trial. See United States v. Harriston, 329 F.3d 779, 790 (11th Cir. 2003) (citations omitted).

Indeed, the district court abuses its authority when it "abandons [its] proper role and assumes that of an advocate." See Fed.R.Evid. 614, Advisory Committee Note. In Moore v. United States the former Fifth Circuit examined the trial judge's proper role in the conduct of a criminal jury trial.

> It is axiomatic ... that '[t]he trial judge has a duty to conduct the trial carefully, patiently, and impartially. He must be above even the appearance of being partial to the prosecution.' On the other hand, a federal judge is not a mere moderator of proceedings. He is a common law judge having that authority historically exercised by judges in the common law process. He may comment on the evidence, may question witnesses and elicit facts not yet adduced or clarify those presented, and may maintain the pace of the trial by interrupting or cutting off counsel as a matter of discretion[.]

598 F.2d 439, 442 (5th Cir. 1979) (citations omitted). In this case, the record does not establish that the district court abandoned its impartiality. Here, it was "entirely proper for the court to make inquiries of a witness in order to clarify the evidence presented." Hanson v. Waller, 888 F.2d 806, 813 (11th Cir. 1989). See also United States v. Bertram, 805 F.2d 1524, 1529 (11th Cir. 1986); Kyle v. United States, 402 F.2d 443, 444 (5th Cir. 1968)).

11

The district court did not become an advocate for the government by drawing attention to Officer Knox's failure to identify Wright in court. It remains well within the district court's discretion to maintain the pace of trial by interrupting or limiting counsel's questions. United States v. Hill, 496 F.2d 201, 202 (5th Cir. 1974). By making the prosecution aware that Knox had yet to identify the defendant, the district court avoided a matter that could have potentially confused the jury. Moreover, both Henry Floyd and Corporal Cantrell definitively identified Wright during their testimony.

In connection with Corporal Cantrell's testimony, Wright again argues that the district court discarded its neutral role by directing the prosecutor to ask the witness to describe Wright's hand gesture. The district court's request for detail did not underscore evidence that would otherwise have gone unnoticed by the jury. Rather, the judge sought to develop and perfect the record so that this Court could understand and comprehend an important piece of evidence from the trial. Without the district court's guidance, this Court could only guess at what Wright's hand gesture might have been. Wright's argument on the issue is misplaced, as it pertains to judicial intervention far beyond what is complained of here. See Blumberg v. United States, 222 F.2d 496, 501 (5th Cir. 1955) (trial judge interrupted too many times and asked too many questions); United States v. Grunberger, 431 F.2d 1062, 1067 (2d Cir.

12

1970) (repeated questioning of witness); Hunter v. United States, 62 F.2d 217, 220 (5th Cir. 1932) (trial judge's vigorous cross-examination of defendant himself). Particularly, United States v. Green suggests that when "more than one or two questions are involved, the proper procedure is 'to call both counsel to the bench, or in chambers and suggest what [the judge] wants done.'" 429 F.2d 754, 760 (D.C. Cir. 1970). Indeed, by addressing the issues at sidebar during both Officer Knox's and Corporal Cantrell's testimony, the district court followed this procedure.

We have reviewed the district court's comments in the framework of the trial as a whole, and conclude that the district court did not become an advocate for the government in this case. Harriston 329 F.3d at 791 n.6. Wright's contentions of error, viewed both separately and in the context of the entire record, expose no such confusion of the roles of judge, jury, and prosecutor. The actions of the district court challenged here amount to "no more than attempts by the presiding judge to expedite the proceedings and to prevent any misunderstanding of a witness's testimony." Hill, 496 F.2d 201, 202 (5th Cir. 1974).

IV. Resisting Arrest Evidence and Jury Instruction

Wright next complains that the admission of his resistance to arrest and accompanying battery on a law enforcement officer unduly prejudiced his case and had no probative value to the charge of possession of a firearm. Wright further

13

contends that the district court erred in instructing the jury that it could consider his resistance as consciousness of guilt. As to the admission of the resistance and battery evidence, the district court has a wide latitude to determine the admissibility of evidence, and we will not disturb the court's judgment absent a clear abuse of discretion. See United States v. Ross, 131 F.3d 970, 987 (11th Cir.1997). This Court will only reverse an evidentiary ruling when it has affected a defendant's substantial rights. United States v. Dodds, 347 F.3d 93, 897 (11th Cir. 2003).

Although Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," it also true that

> [e]vidence of criminal activity other than the charged offense is not extrinsic under Rule 404(b) if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.

United States v. McLean. 138 F.3d 1398, 1403 (11th Cir. 1998) (citing United States v. Ramsdale, 61 F.3d 825, 829 (11th Cir.1995)). Moreover, "[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context...is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime...to complete the story of the crime for the jury." McLean, 138 F.3d at 1403 (quoting United States v.

14

*Williford*, 764 F.2d 1493, 1499 (11th Cir.1985)).  Here, evidence of Wright's actions prior to the discovery of the firearm gives the jury the body of the story, not just the ending. Such evidence was "inextricably intertwined" with the charged offense.

Federal Rule of Evidence 403 dictates that evidence should be excluded if its probative value "is substantially outweighed by the danger of unfair prejudice." Rule 403, however, is an "extraordinary remedy…which should be used sparingly since it permits the trial court to exclude concededly probative evidence." U.S. v. Fallen, 256 F.3d 1082, 1091 (11th Cir. 2001). The nature of the government's evidence against a defendant is meant to be prejudicial, for if all evidence were favorable, there would be no trial. Therefore, we must ask not whether the evidence itself is prejudicial, but rather whether its probative value is outweighed by its prejudicial effect. Id. (citing United States v. Fortenberry, 971 F.2d 717, 721 (11th Cir.1992)). Consequently, the balancing test prescribed by Rule 403 militates in favor of admissibility. See Dodds, 347 F.3d at 897.

Here, the possession of a firearm charge did not encompass the resisting arrest or battery counts, nor did it involve the charge of driving under the influence. Nonetheless, evidence of those events contributed to the understanding of the situation as whole. The erratic driving led Officer Knox to stop Wright.  Knox's assessment of Wright's intoxication gave him to cause to arrest Wright. The series of

events culminated in Wright's violent struggle with Knox, and ultimately the discovery of the firearm. If the jury had merely heard evidence of the last event – the discovery of the firearm – the jury would be relegated to its own, and possibly incorrect, assumptions about the events prior to officers finding the weapon. The probative value of this evidence is demonstrated by the need to put a cohesive sequence of the crime before the jury. Likewise, evidence of resisting arrest is probative of Wright's consciousness of guilt. United States v. Borders, 693 F.2d 1318, 1324 (11th Cir. 1982). This Court has held that "evidence of resistance to arrest and flight is admissible to demonstrate consciousness of guilt and thereby guilt." United States v. DeParias, 805 F.2d 1447, 1454 (11th Cir. 1986) (overruled on other grounds). Therefore, we find that the evidence of Wright's resistance to arrest and the accompanying battery on a law enforcement officer is relevant to proving the charged offense.

Wright also complains about the court's charge on his resistance to the officers. We review a district court's jury instructions for an abuse of discretion. United States v. Guerra, 293 F.3d 1279, 1290 (11th Cir. 2002), cert. denied, 537 U.S. 1141 (2003). Error in jury instructions does not constitute grounds for reversal unless there is a reasonable likelihood that it affected the defendant's substantial rights. See Montgomery v. Noga, 168 F.3d 1282, 1294 (11th Cir.1999); Fed.R.Evid. 103(a). A

16

defendant must specifically and timely object at trial to claimed errors, see Fed.R.Evid. 103(a)(1); errors claimed initially on appeal "do not warrant reversal unless they constitute 'plain error' amounting to a miscarriage of justice seriously affecting the fairness, integrity, or public reputation of the proceeding." United States v. Hawkins, 905 F.2d 1489, 1493 n.1 (11th Cir. 1990) (citing United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985); Fed.R.Crim.P. 52(b)). The purpose of such a strict rule is to "inform the trial judge of possible errors so that he may have an opportunity to correct them." Hawkins, 905 F.2d at 1493, n.1 (internal quotations and citations omitted). Although Wright objected to the resisting arrest instruction, the argument advanced at trial, that the instruction was not a pattern jury instruction, is not the argument he advances on appeal. "In order to preserve an objection to jury instructions for appellate review, a party must object before the jury retired, stating distinctly the specific grounds for the objection." United States v. Starke, 62 F.3d 1374, 1380-81 (11th Cir. 1995) (citations omitted). Wright failed to do so, and consequently, we review this assignment of error under the "plain error" standard of review. United States v. Solomon, 856 F.2d 1572, 1574 (11th Cir.1988), cert. denied, 489 U.S. 1070, 109 S.Ct. 1352, 103 L.Ed.2d 820 (1989).

The complete text of the challenged jury instruction is as follows:

The conduct of a person at the time of his arrest is not, of course, sufficient in

itself to establish the guilt of that person, but is a fact which, if proved, may be considered by the jury in light of all the other evidence in the case in determining the guilt or innocence of that person.

You should consider that there may be reasons for the conduct by the Defendant that are fully consistent with innocence.

A feeling of guilt does not necessarily reflect actual guilt of a crime. If you determine that the conduct of the Defendant showed a consciousness of guilt on the Defendant's part, the weight, if any, to be attached to that evidence is also a matter exclusively for you as a jury to determine.

In formulating the instruction, the district court relied on the language and framework of a jury instruction related to flight - an instruction we upheld in United States v. Borders, 693 F.2d 1318, 1327-28 (11th Cir. 1982). In Borders, we agreed with other circuits that "universally" accepted a defendant's flight, escape, resistance to arrest, concealment, assumption of a false name, and related conduct as admissible evidence of "consciousness of guilt, and thus of guilt itself." Id. at 1324-25 (listing cases allowing evidence of flight) (emphasis added). In the instant case, the district court decided that the jury could draw a similar inference from Wright's resistance to arrest. We are not ignorant to the fact that evidence of flight and resistance to arrest do not amount to identical conduct; however, we have implied that the two are analogous. Borders, 693 F.2d at 1324.

The analysis of the district court's instruction, however, does not end there. In United States v. Myers, the former Fifth Circuit set out four inferences that must be

18

drawn from the defendant's behavior in order for evidence of flight to be logically and legally relevant to show consciousness of guilt:

> The probative value of flight evidence depends upon the degree of confidence with which four inferences can be drawn:(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

550 F.2d 1036, 1049 (5th Cir. 1977). The Fifth Circuit further stated that, to admit flight evidence, the government must make certain that each link in the chain of inferences that concludes with a consciousness of guilt of the crime charged is sturdily supported. Id. Ultimately, the Myers court found the flight instruction to be erroneous because the record did not support the allegations of flight. Specifically, an FBI agent testified that at the time of the defendant's arrest he believed the suspects were beginning to flee at the time of his arrival. Id. 1048-49. The FBI agent's testimony could not support the flight charge because the agent had previously testified that he was not aware that anyone had attempted to flee. Id. Additionally, the crime in question, a robbery, had occurred two months prior to the defendant's arrest and alleged flight attempt. Id. Finally, the appellate court did not accept that another potential instance of flight, which occurred three weeks after the robbery, supported the jury instruction because the evidence did not "demonstrate

19

intentional flight immediately after the commission of a crime or after [accusation] of a crime." Id. at1050.

As Myers points out, "flight is an admission by conduct." Id. at 1049. The same might be said of resisting arrest in Wright's case. In this case, the chain of inferences must move:  (1) from Wright's behavior to the resistance; (2) from the resistance to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the firearm possession; and (4) from consciousness of guilt concerning the firearm possession to actual guilt for that crime. The inference drawn at step three, however,  presents a quandary for the government. Myers recognized that evidence of flight or related conduct, such as resisting arrest, is "only marginally probative as to the ultimate issue of guilt or innocence." Myers, 550 F.2d at 1049.

Wright's consciousness of guilt at the time of the arrest could stem from either his possession of the firearm or driving under the influence. The evidence could go either way, and here the jury found against Wright. The jury is not obligated to give more credence to defense witnesses. See United States v. Bleckley, 475 F.2d 1225 (5th Cir. 1973). While there is not an abundance of direct evidence supporting the trial court's instruction that the conduct of a defendant "at the time of his arrest" may be relevant to guilt, neither is such evidence absent. As we have already discussed, Wright's conduct supported the admission of resisting arrest as evidence, and we

believe that it could sustain a jury instruction on the consciousness of guilt. It is for the jury to infer whether his guilt sprang from the weapon possession or the DUI charge. Indeed, the comment "lights out" could have been made in hindsight, after police informed Wright of the gun's presence, but it is equally probable that Wright made the comment knowing the gun had always been there.

Reviewing the evidence concerning Wright's resistance to arrest, we see no defects that would render the instruction erroneous. Viewing the evidence in the light most favorable to the government, see Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) (superceded by statute), Wright's resistance could sufficiently establish his consciousness of guilt as to the possession of the gun. For example, his comment of "lights out" and the accompanying pistol-like gesture support the inference that Wright knew the weapon was in the car and planned to use it. Moreover, unlike the situation in Myers, Wright's resistance came immediately after Officer Knox asked Wright to place his hands behind his back. These factors permit the instruction on resistance to "let the jury determine its significance and qualitative value, if any." Borders, 693 F.3d at 1327.

We find that Wright failed to establish plain error in the jury instruction. To meet this stringent standard, Wright needed to prove that the "instruction was an incorrect statement of the law and [that] it was probably responsible for an incorrect

21

verdict, leading to substantial injustice." Montgomery v. Noga, 168 F.3d 1282, 1294 (11th Cir. 1999) (quoting Pate v. Seaboard R.R., Inc., 819 F.2d 1074, 1082-83 (11th Cir.1987)). Wright has not demonstrated that the instruction misled the jury or left it to speculate as to an essential point of law. Noga, 168 F.3d at 1294.

## V.  Jury Request for a Ruler

Wright next argues that the district court erred by responding to a jury question outside of his presence. At trial, Wright asserted that this was prejudicial error because the court allowed the jury to use evidence not admitted at trial to assess his defense that he did not know the firearm was in the car. On appeal, Wright now contends that the exchange between the district court and the jury violated the constitutional protections of the Fifth and Sixth Amendments because he had a right to be present at all stages of the criminal proceedings. Wright further contends that the district court eclipsed his argument before he completed it, and that his objection implied the constitutional violation resulting from the ex parte communication.

Ordinarily, we review a court's response to a jury question for an abuse of discretion. United States v. McDonald, 935 F.2d 1212, 1222 (11th Cir. 1991). In his appeal, however, Wright presents different arguments as to why the district court's action was improper. Wright's assertion that this issue should be reviewed other than for plain error lacks merit. Although Wright may not have completed his objection

22

to the interaction between the district court and the jury, the record does not show that the judge prevented such. Therefore, we review this issue for plain error. See United States v. Puche, 350 F.3d 1137, 1148 n.5 (11th Cir. 2003).

To demonstrate plain error, Wright must show: (1) an error; (2) that is plain; (3) that affects the defendant's substantial rights. If the defendant satisfies those three prongs, we may then employ our discretion to note that error only if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." See United States v. Monroe, 353 F.3d 1346, 1349 (11th Cir. 2003) (internal quotation marks and citations omitted). In sum, the "silent defendant," as Wright is here, must establish a "plain, prejudicial, and disreputable" error. Id. (quoting United States v. Vonn, 535 U.S. 55, 59, 122 S.Ct. 1043, 1046, 152 L.Ed.2d 90 (2002)).

In Rogers v. United States, the Supreme Court recognized that a defendant has the right to be present and participate during any communications between a judge and the jury. 422 U.S. 35, 38, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1 (1975), accord Fed.R.Crim.P. 43(a)(2). Rogers, however, plainly stated that the error can be harmless in some cases. Id. at 40; see also United States v. Bentancourt, 734 F.2d 750, 759 (11th Cir. 1984) (finding harmless error where the district court's response to a jury question outside the defendant's presence clearly stated law already in the jury's possession). This is not to say that we approve of any unjustified communication

23

between the district court and the jury without notifying counsel, and we do not condone the district court's actions in this case. Wright and his counsel should have been present when the court decided to give the jury a ruler. Fed.R.Crim.P. 43. The error complained of here, and which the government conceded to, however, was harmless. The jury simply asked for a ruler; not for a clarification of charges, further instructions, or a rule of law. Furnishing the jury with a ruler was unlikely to have made a difference between a guilty verdict and a judgment of acquittal, and it did not affect Wright's substantial rights. The jury viewed the firearm and could estimate its measurements without the advantage of a ruler; the ruler merely functioned as a visual aide. We therefore conclude that it was not plain error to provide the jury with a ruler without consulting Wright.

## VI. Constitutionality of 18 USC § 922(g)

Finally, Wright takes issue with 18 U.S.C. § 922(g), and asserts that the statute is unconstitutional because it fails to specifically define commerce as "interstate or foreign commerce," and that Congress failed to require that a felon's possession of a firearm substantially affects interstate commerce. Although we normally conduct a de novo review regarding constitutional issues, the present issue has been raised for the first time on appeal to this Court, and it is within our discretion whether to address

24

the issue. United States v. Dupree, 258 F.3d 1258, 1259 (11th Cir. 2001).

In United States v. Nichols, we rejected the same argument and upheld the constitutionality of § 922(g). 124 F.3d 1265 (11th Cir. 1997). Moreover, we have consistently upheld the validity of this statute. See e.g., United States v. Dunn, 345 F.3d 1285, 1297 (11th Cir. 2003); United States v. Scott, 263 F.2d 1270 (11th Cir. 2001). cert. denied, 534 U.S. 1166 (2002); United States v. Dupree, 258 F.3d 1258 (11th Cir. 2001). We will not and moreover cannot upset our prior precedent. "[O]nly the Supreme Court or this Court sitting en banc can judicially overrule a prior panel decision." United States v. Marte, 356 F.3d 1336, 1344 (11th Cir. 2004). Wright himself concedes that a panel of this Court cannot revisit arguments already decided. We therefore dismiss Wright's constitutional challenges to § 922(g), as it would not be useful for us to address this issue.

## VII. Conclusion

Upon review of the record and consideration of the parties' briefs, we discern no error in this case because (1) a jury could infer that Wright knowingly possessed the firearm based upon its location under the driver's seat and Wright's subsequent comment and gesture regarding the weapon; (2) the district court remained neutral and unbiased during the course of the proceedings, and acted within its role of

25

developing a comprehensive record by directing one witness to fully describe Wright's hand gesture, and noting that another witness failed to identify Wright; (3) the district court properly admitted evidence regarding Wright's resistance to arrest and battery on a law enforcement officer because a jury could infer that those actions demonstrated a consciousness of guilt of possession of the firearm; (4) Wright's resistance to arrest supported the resulting jury instruction on the consciousness of guilt; (5) it was technically error for the district court to entertain a question from the jury and provide it with a ruler outside of Wright's presence, but such error was harmless; and (6) the constitutionality of 18 U.S.C. § 922(g) has been previously upheld by this Court. Accordingly, we affirm.

**AFFIRMED.**