[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 23, 2006
THOMAS K. KAHN
CLERK

No. 05-11333
Non-Argument Calendar

_____

D. C. Docket No. 04-20632-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVION ANTHONY BLACKBURN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 23, 2006)**

Before BLACK, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Davion Anthony Blackburn was convicted by a jury of (1) conspiracy to

import at least 1 kilogram of cocaine and 100 grams of heroin, in violation of 21 U.S.C. § 952; (2) conspiracy to possess with intent to distribute at least 1 kilogram of cocaine and 100 grams of heroin, in violation of 21 U.S.C. § 846; and (3) possession with intent to distribute at least 1 kilogram of cocaine and 100 grams of heroin, in violation of 21 U.S.C. § 841.

At trial, during its opening instructions to the jury, the district court reminded the jury that it should not infer that the court had any opinion about the case from the court's rulings or comments.

The evidence at trial established that Immigration and Customs Enforcement Agents were involved in an investigation into narcotics smuggling using sea cargo containers. Using a confidential informant named "Fabian" pretending to be a corrupt dock worker responsible for checking cargo, agents arranged with a man named Clark from Costa Rica to deliver drugs on a Seaboard Marine ship in exchange for $8,000. On the day of the shipment, agents went to the dock, boarded the ship, and conducted a search for the container Clark had identified as containing the drugs. In the center console of the identified container, the agents found contraband, which a DEA chemist confirmed was 1.454 kilograms of cocaine and 201.4 grams of heroin. The agents and Fabian then arranged a controlled delivery of the drugs to a man named "Pumpi." At the arranged time,

Fabian and an undercover officer waited at the parking lot where the delivery was scheduled. Blackburn arrived as a passenger in a car driven by Cyril Gilbert. As Blackburn made the exchange, the agents approached and Blackburn ran. The agents chased Blackburn and he eventually stopped and was arrested. In his possession, agents found cell phones with Fabian's number and a call to Costa Rica. Blackburn waived his right to remain silent and admitted that his nickname was Pumpi. Gilbert also was taken to the station, but was released. When Blackburn noticed Gilbert leaving the station, he asked why because Gilbert had driven the getaway car.

The government rested its case-in-chief and the court denied Blackburn's motion for judgment of acquittal. Blackburn then testified as follows: He worked as a part-time reggae disk jockey ("DJ") named Pumpi with an upscale sound system using records and dub plates, which he defined as custom made music that dubbed the name of his sound system into the songs. Blackburn bought a set of 8 dub plate CDs for $8,000 from a man named Fabian from Costa Rica. He did not want the CDs shipped because he would have no recourse if he received the wrong items. After he exchanged the money for the package he thought contained dub plates, he observed men coming towards him and he ran because he thought he was being robbed.

3

During Blackburn's testimony, the court expressed confusion about the dub plates and asked Blackburn: "Are you talking about regular size CDs, are the dub plates the same size as a regular CD?" Blackburn responded, "Dub plate CDs." Pointing to its own CD player and CDs, the court asked, "Is it the same size CD that you play in a radio like this size?" Blackburn stated that it was. The court then explained that "the record should reflect he is talking about approximately five inch by five inch square, a quarter inch think if you take a separate holder. If you take the cassette out, it is a quarter inch thick or a sixteenth of an inch thick."

The government then asked Blackburn to demonstrate how the plates could be packaged in such a way that would make them appear to be the same size as the brick of drugs that was delivered. After this exchange, defense counsel moved for a mistrial because the judge's comments invoked laughter from the jury and prejudiced Blackburn. The court denied the motion, noting that it was unsure how the exchange was prejudicial. Defense counsel claimed that it implied his defense was laughable, but the court disagreed and stated that the comment was directed at the government because the prosecutor was using the judge's own property to clarify the items for the jury.

Defense counsel rested its case. After the government's rebuttal witness, Blackburn renewed his motion for judgment of acquittal, which the court again denied.

4

In preparing jury instructions, the court questioned whether the parties thought an instruction of flight was appropriate. Although Blackburn objected, the court concluded that the instruction was proper. Defense counsel then asserted that the court was acting as an advocate for the government by raising the instruction, but the court overruled the objection. In closing argument, the court again reminded the jury that the jury was the sole fact-finder and that it should not infer that the court had any opinion based on comments or rulings it had made. The court instructed the jury, inter alia, that

> Intentional flight by a person immediately after a crime has been committed is not, of course, sufficient in itself to establish the guilt of that person, but intentional flight under those facts is a fact which, if proved, may be considered by the jury in light of all the other evidence in the case in determining the guilt or innocence of that person. Whether or not the defendant's conduct constituted flight is exclusively for you, as the jury, to determine. And if you do so determine whether or not that flight showed consciousness of guilt on his part and the significance to be attached to that evidence are also matters exclusively for you as a jury to determine. I do remind you that in your consideration of any evidence of flight, if you should find that there was flight, you should also consider that there may be reasons for this which are consistent with innocence. There may be many reasons for a person to be unwilling to be interviewed by law enforcement agents which are perfectly innocent reasons and in no way show any consciousness of guilt on the part of that person. And may I also suggest to you that a feeling of guilt does not necessarily reflect actual guilt of a crime which you may be considering.

The jury convicted Blackburn on all three counts, further finding that the quantity of drugs was 100 grams of heroin and 1 kilogram of cocaine.

5

The probation officer prepared a presentence investigation report, determining the guidelines range to be 63 to 78 months imprisonment. Blackburn submitted no objections to the PSI calculations. The government objected to the failure to recommend a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 based on Blackburn's perjured testimony at trial.

At sentencing, the court questioned whether Blackburn's decision to testify was sufficient to warrant the obstruction-of-justice enhancement and determined that the enhancement was proper because Blackburn's testimony was "ludicrous." Blackburn did not object to the enhancement, but merely requested a sentence at the low end of the original guidelines range (63 months). After the court added the enhancement, the resulting guidelines range was 78 to 97 months imprisonment. The court noted that the guidelines were advisory and, in consideration of the guidelines range, Blackburn's lack of criminal history, and the sentencing factors in 18 U.S.C. § 3553(a), found that a sentence of 68 months was appropriate.

On appeal, Blackburn raises three issues: (1) Whether the district court properly questioned Blackburn during his testimony; (2) Whether the district court acted as an advocate for the government by suggesting a jury instruction on flight; and (3) Whether the district court properly included a sentencing enhancement for obstruction of justice, U.S.S.G. § 3C1.1.

6

A. Questions Posed by the Court

Blackburn argues that the district court became an advocate for the government when it cross-examined him and implied that his defense was unbelievable.

We review a district court's denial of a motion for a mistrial for abuse of discretion. United States v. Wright, 392 F.3d 1269, 1274 (11th Cir. 2004), cert. denied, 125 S.Ct. 1751 (2005). "The district court abuses its authority when it 'abandons [its] proper role and assumes that of an advocate.'" Id. (citing Fed.R.Evid. 614, Advisory Committee Note).

As this court has explained,

[a] trial judge is . . . more than a mere moderator and is under a duty to question witnesses and comment on evidence when it appears necessary. The trial court may interrogate a witness to clarify his testimony or to insure that a case is fairly tried. On the other hand, a trial judge improperly interjects himself into the trial by questioning witnesses when the attorneys are competently conducting their cases.

United States v. Block, 755 F.2d 770, 775-76 (11th Cir. 1985); see also Fed.R.Evid. 614(b); Wright, 392 F.3d at 1274-75; Moore v. United States, 598 F.2d 439, 442 (5th Cir. 1979).[1] Although the cumulative effect of the many and manifest interventions by the trial judge can deprive an appellant of a fair trial, the

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), this court held that all decisions handed down by the old Fifth Circuit before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.

use of a curative instruction reminding the jury not to infer the court's opinions from any comments or rulings may prevent prejudice. United States v. Benefield, 889 F.2d 1061, 1066 (11th Cir. 1989); United States v. Chestang, 849 F.2d 528, 535 (11th Cir. 1988); Block, 755 F.2d at 775-77.

Here, there was no error or prejudice to Blackburn. First, the comments were not so numerous or egregious as to constitute manifest injustice. See Benefield, 889 F.2d at 1066. Second, the comments were designed to clarify the testimony. Before the court interjected, it was not clear from the trial testimony how big a dub plate was, what it looked like, or even what it was used for. Despite repeated questions from defense counsel, Blackburn's testimony concerning the dub plates was confusing. Nothing in the judge's questions "strayed from neutrality." Moore, 598 F.2d at 442. Finally, before trial and during jury instructions, the court reminded the jury that it was not to consider anything the court said as an opinion on the evidence or Blackburn's guilt. This curative instruction was sufficient to prevent any prejudice. See Block, 755 F.2d at 777.

B. Jury Instruction

Blackburn next asserts that the court acted as an advocate of the government by raising the issue of a jury instruction on flight, which was not warranted under the facts of the case.

We review a district court's jury instructions for abuse of discretion.

8

Wright, 392 F.3d at 1277. This court has consistently approved of the inclusion of a jury instruction on flight, leaving the factual-finding to the jury. Wright, 392 F.3d at 1277-78; United States v. Borders, 693 F.2d 1318, 1327 (11th Cir. 1982). As the government notes, the court has the duty to instruct the jury on all issues raised during trial. Walker v. United States, 301 F.2d 954, 958 (5th Cir. 1962); see also United States v. Glassman, 562 F.2d 954, 958 (5th Cir. 1977) (affirming district court's jury instruction not requested by the government because it was an accurate statement of the law).

Here, the district court properly instructed the jury in flight as evidence of guilt. First, there was evidence presented that Blackburn tried to flee when police arrived at the drug delivery. The jury heard Blackburn's testimony that he thought he was being robbed. The jury, however, was free to believe the opposite of Blackburn's account, which was a risk he took when he chose to testify. United States v. Alejandro, 118 F.3d 1518, 1521 (11th Cir. 1997). Thus, the instruction was appropriate under the facts of the case.

Second, the instruction was an accurate statement of the law. See Wright, 392 F.3d at 1278; Borders, 693 F.2d at 1327 (using the same instruction). Finally, the court was obligated to instruct the jury on all evidence raised at trial. Because the government presented evidence of flight as a theory of guilt, the court properly issued the instruction, even in the absence of the government's request.

9

C. Sentencing Enhancement

Finally, Blackburn argues that the court improperly applied an obstruction-of-justice enhancement without making specific findings of fact necessary to support the enhancement, and there is no evidence that the court would not have imposed a lesser sentence had the guidelines range been lower.

When a defendant fails to object at sentencing, he waives challenges to his guidelines calculations.  United States v. Jones, 899 F.2d 1097, 1103 (11th Cir. 1990).  Here, Blackburn did not object to the enhancement, but merely requested a sentence at the low end of the guidelines range as originally calculated.  Therefore, Blackburn failed to preserve this issue, and we need not address its merits.

For the foregoing reasons, we AFFIRM the convictions and sentences.