[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 1, 2005
THOMAS K. KAHN
CLERK

No. 04-10989
Non-Argument Calendar
_____

D.C. Docket No. 03-00341-CR-T-23-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANDRES BUJANDA-ROJAS,
a.k.a. Jaime Gonzalez San Miguel, Jr.,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Middle District of Florida

_____

(June 1, 2005)

Before CARNES, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

Andres Bujanda-Rojas appeals his conviction for reentry of a deported

alien, in violation of 8 U.S.C. § 1326(a) and (b)(2), and his sentence of 71 months' imprisonment. On appeal, Bujanda-Rojas makes three claims: (1) that the district court erred by denying his motion for a judgement of acquittal because the evidence presented by the prosecution was insufficient to convict him; (2) that the district erred by admitting testimony by a police officer stating that Bujanda-Rojas was a "felon" and by denying his subsequent motion for a mistrial; and (3) that his sentence was unconstitutionally enhanced 16 levels under U.S.S.G. § 2L1.2(b)(1)(A)(ii) because his prior convictions for making terroristic threats and for aggravated assault were not stipulated to by him or found by a jury, but were found by the sentencing judge, in violation of Blakely v. Washington, __ U.S. __, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) and United States v. Booker, __ U.S. __, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). We address these arguments in turn.

## 1. Sufficiency of the Evidence

We review the sufficiency of the evidence supporting a criminal defendant's conviction de novo. United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004). In so doing, we view the evidence "in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor," and we "will not overturn a conviction on the grounds of insufficient evidence unless no rational trier of fact could have found the essential

2

elements of the crime beyond a reasonable doubt." Id. (internal citations and quotation marks omitted).

Bujanda-Rojas only disputes the sufficiency of the evidence supporting one essential element of the crime — whether he had been "deported" pursuant to 8 U.S.C. § 1326(a) and (b)(2). As part of its burden of establishing that Bujanda-Rojas had been "deported," the government was required to prove beyond a reasonable doubt that he had been "physically removed from the United States." See United States v. Zelaya, 293 F.3d 1294, 1298 (11th Cir. 2002). Bujanda-Rojas argues that while the government can prove that he was transported to the border crossing between the United States and Mexico at Presidio, Texas, it did not produce sufficient evidence at trial that he actually crossed the border into Mexico, and therefore did not sufficiently establish that he had been "deported" as required by law.

The government's evidence at trial included the following:

1. Bujanda-Rojas' "Warrant of Removal/Deportation" ("I-205 form") containing signed statements by INS Agent Morales, who transported Bujanda-Rojas to the U.S.-Mexican border and testified at trial, that he had "witnessed" and "verified" Bujanda-Rojas' departure from the United States.

2. Testimony by Agent Morales that, while he had no independent recollection of seeing Bujanda-Rojas physically cross the border into Mexico, he followed substantially the same procedures for transporting deportees to the Presidio border crossing for the preceding fifteen years. Agent Morales testified that

3

each deportee to be transported to the border would arrive at his office accompanied by an I-205 form. He would compare the photo on the I-205 form with each deportee to verify that the person identified by the form was the person to be deported. He would also place the names of the deportees with I-205 forms on a manifest and then verify that its contents were accurate by calling the names of each deportee and having them identify themselves. Only the deportees that responded properly to the roll call were allowed to board the vehicle bound for the border. Agent Morales also testified that he would transport the deportees to the U.S. side of the bridge that crossed into Mexico, past the U.S. port of entry but shy of the international border that lay at the middle of the bridge. He testified that he would park the van so that the deportees emerged facing the bridge crossing, and would "keep an eye on [the deportees] until everyone is gone [across the border into Mexico]." Finally, he testified that he would hand the manifest to the last deportee to disembark from the vehicle with instructions to give it to Mexican immigration authorities, who had been contacted by their U.S. counterparts by telephone beforehand with the number of deportees to be transported to the border on that particular trip, and who would independently check names on the manifest against the identities of the arriving deportees and inform U.S. immigration officials of any discrepancies. Agent Morales testified that Mexican officials had informed them of a discrepancy only once in the fifteen years that he had performed this job.

3.     Documentary evidence and testimony by Agent Morales demonstrating that the height of the bridge and the fences surrounding the border crossing would make it difficult for a deportee to avoid crossing the U.S.-Mexican border over the Presidio bridge unnoticed.

4.     Testimony by Immigration and Customs Enforcement (ICE) Special Agent Harry that Bujanda-Rojas told him in an interview after his arrest that he had been deported from the United States by the INS. Special Agent Harry conducted this interview in English, although English is not Bujanda-Rojas' native language, but testified that Bujanda-Rojas had "no problem" comprehending him in English and that he could understand Bujanda-Rojas' responses in English.

5.     A "Record of Sworn Statement in Affidavit Form," filled out by Special Agent

4

Harry but which Bujanda-Rojas refused to sign, stating that Bujanda-Rojas responded affirmatively to the question, "Have you ever been ordered deported, excluded, or removed from the United States?"

This evidence, viewed in the light most favorable to the government with all reasonable inferences and credibility choices made in the government's favor, is sufficient to sustain Bujanda-Rojas' conviction.

## 2. Admission of Evidence that Bujanda-Rojas was a "Felon" and Subsequent Denial of Bujanda-Rojas' Motion for a Mistrial

The district court admitted at trial, over Bujanda-Rojas' objections, testimony from a sheriff's deputy that U.S. immigration authorities told him that Bujanda-Rojas was a "deported felon." Bujanda-Rojas subsequently moved for a mistrial on the basis that the comment was irrelevant and highly prejudicial, which the district court denied, but instructed the jury to disregard "any information that [the deputy] might have received from others against the Defendant."

We review a district court's refusal to grant a mistrial for abuse of discretion. United States v. Perez, 30 F.3d 1407, 1410 (11th Cir. 1994). "When a curative instruction has been given to address some improper and prejudicial evidence, we will reverse [a district court's denial of a motion for mistrial] only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition." Id. (internal citations and quotation marks omitted). Moreover,

"[i]mproper and prejudicial testimony is less likely to mandate a mistrial when there is other significant evidence of guilt which reduces the likelihood that the otherwise improper testimony had a substantial impact upon the verdict of the jury." Id. at 1411 (internal citations and quotation marks omitted). Regardless of the admissibility of the deputy's testimony, in light of the other evidence of Bujanda-Rojas' guilt, it was not so prejudicial as to be incurable by the district court's curative instruction. Thus, the district court did not abuse its discretion by refusing to grant a mistrial.

## 3. **Blakely/Booker Claim**

Because Bujanda-Rojas raises his Blakely/Booker claim for the first time on appeal, we review it for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1297-98 (11th Cir. 2005), petition for cert. filed, (U.S. Feb. 23, 2005) (No. 04-1148). We may not correct an error that the appellant has failed to preserve unless: (i) there is error; (ii) that is plain; (iii) that affects the appellant's substantial rights; and (iv) that affects the fairness, integrity, or public reputation of judicial proceedings. Rodriguez, 398 F.3d at 1298.

In Bujanda-Rojas' case there was no constitutional Booker error. Pursuant to Booker, the Sixth Amendment requires that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum

6

authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 125 S. Ct. at 756. Although Bujanda-Rojas' sentence exceeded the maximum authorized by the jury's verdict, based on a fact neither admitted by Bujanda-Rojas or proved to a jury beyond a reasonable doubt, Bujanda-Rojas' sentence is constitutional because that fact constitutes a prior conviction.

However, the district court did err by sentencing Bujanda-Rojas under a mandatory sentencing guidelines scheme, even though it imposed a constitutional sentence. United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005). Moreover, such error is plain, even though the district court sentenced Bujanda-Rojas before Booker was decided. Id. at 1331.

But Bujanda-Rojas cannot satisfy the third prong of the plain-error test. To satisfy the third prong of this test, a defendant raising a Booker claim must demonstrate a "reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." Rodriguez, 398 F.3d at 1301. Nothing in the record indicates that the district court would have imposed a lesser sentence on Bujanda-Rojas had it sentenced him under an advisory guidelines scheme. Moreover, the district court imposed the longest sentence possible within the applicable guidelines range.

7

Because Bujanda-Rojas cannot satisfy the third prong of the plain-error test, we therefore will not correct the district court's non-constitutional <u>Booker</u> error.

Accordingly, we affirm Bujanda-Rojas' conviction and sentence.

**AFFIRMED.**