[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-17220
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 6, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-10043-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERMAINE WATSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 6, 2009)

Before CARNES, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Jermaine Watson appeals his conviction for possession of a firearm by a

convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Watson

argues that the evidence was insufficient to support his conviction and that his conviction was unconstitutional because § 922(g) does not require proof of a substantial nexus between the offense and interstate commerce. We disagree and affirm his conviction.

## BACKGROUND

The following evidence was presented at trial:

In the early morning of December 13, 2007, Key West Police Officer Frank Betz was on duty "running traffic" at a particular intersection, looking for moving violations or equipment violations. Officer Betz testified that at approximately 4:00 a.m., he observed a white SUV with its license tag light out and decided to pull the vehicle over to inform the driver of the problem. As he approached the stopped vehicle in his car, Officer Betz saw that "the front right passenger was moving around quite a bit which isn't very usual." Betz testified that such movement "[t]ypically [is] a sign that someone is either concealing something or for an officer's safety issue [*sic*] if they're looking to ambush us, getting a weapon to do harm to us."

Officer Betz called a nearby officer for back up and approached the vehicle. He observed three occupants in the vehicle: the driver, Kwana Gallagher-Weeks, a back seat passenger located behind the driver, Karan Rodgers, and a front seat

2

passenger whom he recognized as Watson. Officer Betz and Gallagher-Weeks went together to view the inoperable tag light at the rear of the vehicle. Officer Betz requested consent to search the vehicle, and Gallagher-Weeks consented to the search while they were standing outside the car. Officer Betz testified that he wanted to search the car because of the suspicious movements of the front passenger as Betz approached the vehicle.

Officer Betz described his search of the vehicle, starting with the driver's seating area and the back seat passenger's area behind the driver. Officer Betz, however, did not search the backseat area behind the front right passenger's seat, because there was a baby seat on the seat and "[a] lot of clothes and the back right side was pretty cluttered." Betz testified that "there [was] a lot of clutter on the floorboard and there[ was] no way – I mean, it would have been a long time to pull everything out and not practical." When he moved to the front passenger's area and looked under the front passenger seat, Officer Betz saw a bandana, which he moved and discovered the handle of a gun. At that point Officer Betz handcuffed Watson with the assistance of back-up Police Officer Keohane.

According to Officer Betz, each of the three individuals in the car was given Miranda warnings, and each gave a statement. Watson told Officer Betz that "we" – meaning Watson and Rodgers – got the gun outside a nearby CVS

3

store from "a white dude," whom Watson briefly described. Watson admitted that he knew the gun was in the car, but denied that the gun was his, and could not offer an explanation for how it ended up hidden under his seat. On cross-examination, Betz stated that "[w]here the weapon was located it was improbable that Mr. Rodgers had access and it was out of his arm's reach. He had no access to where the weapon was." Betz also opined that the position of the gun under the seat with the handle facing forward was more consistent with Watson in the right front seat putting it under the seat than with Rodgers doing so from the back seat.

Gallagher-Weeks, the driver, testified that she was either called by Watson or flagged down by him as she was driving, and that she agreed to drive Watson and Rodgers to the bus station. When confronted with the gun found in her vehicle during the search, Gallagher-Weeks asserted that it was not her gun and that she had never seen it before. Weeks also denied having seen anyone hide the gun under the seat.

Officer Keohane testified that she arrived on the scene as Officer Betz was beginning his search of the car. When the search yielded the gun, she testified that Officer Betz tried to handcuff Watson, but that he was agitated and struggling with Officer Betz, so she assisted in handcuffing him.

4

Key West Police Officer David Kouri testified next, stating that he was the officer that read Watson his Miranda rights, and that he heard portions of Watson's statement. He testified that Watson denied that the gun was his, saying that it belonged to Rodgers, but admitted knowing the gun was in the car.

The government's final witness was Karan Rodgers. Rodgers testified that on December 13, he received a call from Watson asking him if he wanted a ride to the bus station. Rodgers testified that he was not with Watson when he was picked up by Gallagher-Weeks, but that Watson was already in the vehicle when he got in. Rodgers stated that he got into the back seat behind Gallagher-Weeks because the car seat and other items cluttered the back passenger side. He denied bringing a gun in the car with him and denied any knowledge that the gun was in the car, testifying that he had never seen the gun before.

At the close of the government's case, Watson stipulated that he had a prior felony conviction and that the subject gun had traveled in interstate commerce. Watson then moved for a judgment of acquittal, arguing that the government had not proved a prima facie case of possession, as the evidence regarding ownership and possession of the gun was conflicting. The court denied the motion.

The defense then called its two witnesses: Officer Betz and Gallagher-Weeks. Officer Betz was confronted with the video record of the traffic stop, and

5

testified that the video showed a shadowy figure or figures in the back of the car move toward the right, and that given Watson's location in the front passenger seat, the movement could not have been from him.

Gallagher-Weeks was presented by the defense with several pictures of the inside of her car and testified that she believed based on the pictures that it would be easier to reach under the front passenger seat from the back than from the front. She also testified that on the morning of the subject traffic stop, there were likely toys in the back seat, but did not recall any clothes or other items being there. At the close of the defense case, Watson renewed his earlier motion for acquittal. The district court denied the motion, finding the evidence sufficient to go to the jury.

After deliberating, the jury delivered a guilty verdict. Watson was thereafter sentenced to 235 months' imprisonment and 3 years of supervised release.

**STANDARD OF REVIEW**

"We review sufficiency of the evidence <u>de novo</u>, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." <u>United States v. Trujillo</u>, 146 F.3d 838, 845 (11th Cir. 1998). "The relevant question in reviewing a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt." Id. (internal quotation omitted). "We will not overturn a conviction on the grounds of insufficient evidence 'unless no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004) (quoting United States v. Christo, 129 F.3d 578, 579 (11th Cir. 1997).

We review the constitutionality of statutes de novo. United States v. Reynolds, 215 F.3d 1210, 1212 (11th Cir. 2000).

## DISCUSSION

Watson stipulated at trial that he was a convicted felon at the time of the charged offense and that the firearm at issue was in interstate commerce. To prove a violation of 18 U.S.C. § 922(g)(1), the government therefore was required to prove only that Watson knowingly possessed the firearm. See Wright, 392 F.3d at 1273 ("Section 922(g)(1) required the government to prove 'three distinct elements:' (1) that Wright was a convicted felon; (2) that Wright knew he was in possession of a firearm; and (3) that the firearm affected or was in interstate commerce."). "The government need not show actual possession in order to establish knowing possession; it need only show constructive possession through direct or circumstantial evidence. Constructive possession exists when the

7

defendant exercises ownership, dominion, or control over the item or has the power and intent to exercise dominion or control." United States v. Greer, 440 F.3d 1267, 1271 (11th Cir. 2006).

The jury was presented with ample evidence at trial supporting the conclusion that Watson knowingly possessed the gun Officer Betz found underneath the passenger seat in Gallagher-Weeks's car. First, Officer Betz testified that the front passenger – who turned out to be Watson – was moving around in an unusual manner while Betz approached the vehicle. Officer Betz gave his opinion that such movements typically indicate that the person "is either concealing something or [is] looking to ambush [the police], getting a weapon to do harm to us." Second, Officer Betz testified that Watson made the statement that "we" – meaning himself and Rodgers – got the gun earlier that evening; Watson thereby expressed actual knowledge of and participation in the gun purchase. Officer Kouri also testified that Watson stated that he was aware of the gun. Third, the gun was discovered under the front passenger seat where Watson was seated, and the handle was facing forward, which Officer Betz testified was most consistent with the front seat passenger having stowed it there. Fourth, Officer Betz testified that the area behind the passenger seat was extremely cluttered, making it impractical for him to search under the front passenger seat

8

from the back seat. This testimony supports the inference that it would have been difficult for Rodgers, from the back seat, to have placed the gun under the front passenger seat and that it was, therefore, more likely to have been Watson that placed the gun there. Finally, Rodgers and Gallagher-Weeks both testified that they were not aware that a gun was in the car and had never seen the gun before. The jury was entitled to credit the live testimony of these witnesses that they were not in possession of the firearm.

Although there were two other individuals in the car that Watson argues could have been in possession of the firearm, the jury is free to choose among reasonable constructions of the evidence. United States v. Rudisill, 187 F.3d 1260, 1267 (11th Cir. 1999). A reasonable construction of the evidence presented at trial is that Watson was in knowing possession of the firearm because evidence supported the conclusions that (1) Watson participated in the purchase of the gun, (2) the location and position of the gun made it most likely that Watson placed it there, and (3) Watson's movements as Officer Betz approached the gun suggested that Watson was hiding the gun at that time. Viewing all inferences and credibility determinations in the light most favorable to the government, the evidence was sufficient for the jury to conclude beyond a reasonable doubt that Watson knowingly possessed the firearm in question.

9

Watson also argues that the statute under which he was convicted, 18 U.S.C. § 922(g), is unconstitutional because the statute does not require a substantial nexus between the offense and interstate commerce. This argument, however, is foreclosed by United States v. McAllister, 77 F.3d 387, 389-90 (11th Cir. 1996), in which this court held that § 922(g) is not unconstitutional on its face because the statute explicitly requires the government to prove that the gun has a connection to interstate commerce. We are bound by McAllister. See United States v. Adams, 316 F.3d 1196,1197 n.1 (11th Cir. 2003) ("The law of this circuit is 'emphatic' that only the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision." (quoting Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997)). Additionally, Watson stipulated that the gun had traveled in interstate commerce and therefore there was no constitutional violation as applied to Watson.

## CONCLUSION

For the foregoing reason, we **AFFIRM** Watson's conviction for violating 18 U.S.C. §§ 922(g)(1) and 924(e)(1).