[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-10222
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 24, 2011
JOHN LEY
CLERK

D.C. Docket No. 6:10-cr-00234-JA-GJK-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EMELIO RUEDA-HERNANDEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 24, 2011)

Before BARKETT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

After a jury trial, Emilio Rueda-Hernandez appeals his conviction for

conspiracy to possess with intent to distribute fifty grams or more of

methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 846, and aiding and abetting possession with intent to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2. On appeal, Rueda-Hernandez challenges the sufficiency of the evidence supporting his convictions. After review, we affirm.[1]

To convict a defendant of drug conspiracy, the government must prove beyond a reasonable doubt: (1) an agreement by two or more people to violate the federal drug laws; (2) the defendant knew about the agreement; and (3) the defendant knowingly and voluntarily participated in the agreement. See United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001). Because conspiracy is "predominantly mental in composition," the government need not prove the existence of a formal agreement, but may instead demonstrate by circumstantial evidence a meeting of the minds to commit the unlawful act. United States v. Toler, 144 F.3d 1423, 1426 (11th Cir. 1998) (quotation marks omitted).

To prove possession of an illegal drug with intent to distribute it under 21 U.S.C. § 841(a)(1), the government must show that the defendant (1) possessed an

---

[1]We review a challenge to the sufficiency of the evidence de novo, "viewing the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004) (quotation marks and brackets omitted). We will affirm a guilty verdict unless no reasonable trier of fact could have found guilt beyond a reasonable doubt. United States v. Toler, 144 F.3d 1423, 1428 (11th Cir. 1998).

illegal drug and (2) intended to distribute it. United States v. Miranda, 425 F.3d 953, 959 (11th Cir. 2005). To prove guilt under an aiding and abetting theory, the government must prove that (1) the substantive offense was committed, (2) the defendant committed an act that contributed to and furthered the offense and (3) the defendant intended to aid in its commission. United States v. Camacho, 233 F.3d 1308, 1317 (11th Cir. 2000).

Rueda-Hernandez argues that there was insufficient evidence to prove that he knowingly entered into methamphetamine conspiracy or that he intended to aid in the possession of the methamphetamine. We disagree.

The government presented evidence that law enforcement encountered Defendant Rueda-Hernandez while investigating Jose Perez, a suspected dealer in large amounts of crystal methamphetamine in the Atlanta area. A confidential informant ("CI") posing as a buyer arranged to meet Perez and his boss, known as Chaffa (as well as Salvador and Ramiro), at an Orlando bus stop. When the CI arrived, Perez was accompanied by Defendant Rueda-Hernandez.

The CI, who was wearing a wire, drove the two men to a hotel. During the drive, the CI discussed with Perez the price and quantity of drugs for sale using coded language. Perez and Defendant Rueda-Hernandez explained to the CI that Defendant Rueda-Hernandez was not the boss (i.e., Chaffa), but the boss's friend

and brother-in-law. Chaffa sent Defendant Rueda-Hernandez, which the CI understood to mean that Rueda-Hernandez's role was to make sure the buyers were serious and had the money. The plan was to complete the deal when the methamphetamine arrived from Atlanta. Rueda-Hernandez paid close attention to the conversation, nodding his head in the affirmative and occasionally saying, "Yes." When the CI dropped the men off at the hotel, the CI understood that they would contact the owner of the drugs that night.

The next day, while under surveillance, Perez and Defendant Rueda-Hernandez moved to a newly leased apartment. There, they met two other men, Jose Roano and Douglas Rodriguez, who were hired by Chaffa to drive the methamphetamine overnight from Atlanta to Orlando. Unbeknownst to Roano and Rodriguez, investigators had tracked them as they drove. Roano picked up the methamphetamine from Chaffa, who instructed Roano to call Perez as soon as he arrived in Orlando. According to Roano, the plan was to return to Atlanta with Defendant Rueda-Hernandez after the deal was done.

According to Roano and Rodriguez, once inside the apartment, the four men, including Defendant Rueda-Hernandez, discussed how the methamphetamine was going to be delivered, referring to it as "ice." Perez said that half of the drugs would remain at the apartment. At Roano's request,

4

Defendant Rueda-Hernandez went to the store and bought plastic wrap to wrap the money they would receive during the transaction.

Later, the four men, including Defendant Rueda-Hernandez, went to Roano's car, where the methamphetamine was stored. Roano took a bag of drugs that was wrapped in a jacket from the car. Roano gave the jacket to Defendant Rueda-Hernandez, who returned to the apartment. The other three men drove to a nearby mall to sell the remaining two bags of drugs to the CI.

At the mall, Perez and Roano gave the CI a box containing 1048 grams of methamphetamine. Afterward, Perez, Roano and Rodriguez were arrested. Meanwhile, investigators surveilled Defendant Rueda-Hernandez as he paced outside the apartment. Shortly after Defendant Rueda-Hernandez received a cell phone call, he began walking toward the parking lot and was arrested. Inside the apartment, investigators found the remaining bag of drugs, containing 1300 grams of crystal methamphetamine, inside the stove drawer. They also found a bus ticket in the name of Josaya Delgado in Defendant Rueda-Hernandez's duffle bag. Cell phone records indicated that shortly after the CI dropped Defendant Rueda-Hernandez and Perez off at the hotel, Defendant Rueda-Hernandez called Chaffa, the man behind the drug deal.

In sum, the government's evidence showed that Defendant Rueda-Hernandez: (1) arrived with Perez, who was planning to sell methamphetamine for Chaffa, (2) was sent by Chaffa as his representative, (3) actively participated in conversation with the CI about the details of the upcoming drug transaction, (4) called Chaffa on his cell phone after he and Perez arrived at the hotel, (5) was present at the apartment when the men discussed the upcoming drug deal, (6) bought plastic wrap to wrap the proceeds from the sale, and (7) carried part of the drugs to the apartment and hid them in the stove.

Although Defendant Rueda-Hernandez testified that he was an unwitting dupe who met Perez on the bus ride to Orlando, the jury obviously did not believe him. Moreover, Rueda-Hernandez's discredited testimony is substantive evidence of his guilt. See United States v. Williams, 390 F.3d 1319, 1326 (11th Cir. 2004).

Viewing this evidence in the light most favorable to the government, a jury could reasonably conclude that Defendant Rueda-Hernandez knew about and voluntarily joined the conspiracy to possess with intent to distribute methamphetamine and knowingly aided and abetted the possession of the methamphetamine with intent to distribute it.

**AFFIRMED.**

6