[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-14405
Non-Argument Calendar

_____

D.C. Docket No. 4:15-cr-00019-CDL-MSH-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DYRELL LESHAUN DAVIS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(March 14, 2018)

Before MARTIN, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

The petition for rehearing is granted in part and denied in part. We withdraw our previous opinion, dated October 27, 2017, and issue this opinion in its place.

A jury acquitted Dyrell Davis of possession of a firearm in furtherance of a drug trafficking crime, and of possession of marijuana with intent to distribute. It found him guilty of the lesser included offense of possession of marijuana, as well as of being a convicted felon in possession of a firearm. Mr. Davis appeals his felon-in-possession conviction, arguing that the government committed prosecutorial misconduct by making improper remarks in its rebuttal closing argument before the jury, and that the remarks constituted improper character evidence. He also challenges the sufficiency of the evidence connecting him to the firearm. Finally, he appeals his sentence, challenging the use of two prior Georgia convictions for aggravated assault to enhance his sentence as a career criminal. After review, we affirm.

**I**

On the morning of April 25, 2014, several police officers executed a search warrant at an apartment in Columbus, Georgia. Mr. Davis's mother, sister, and brother lived at the apartment. But although Mr. Davis occasionally slept overnight at the apartment, he did not live there.

As they approached the apartment from the rear, the officers observed two men (later identified as Mr. Davis and his friend, Isiah Gordon) outside of the

apartment. Upon seeing the police, Mr. Davis fled inside the apartment. The officers followed Mr. Davis into the apartment and through the kitchen (the room immediately inside the back door), and apprehended him in the living room. The officers then searched the apartment. They found digital scales in the kitchen, a 9mm handgun buried beneath some trash in the kitchen trashcan, and a baggie of marijuana weighing 48.2 grams in a light fixture in a bedroom. On top of a dresser in that same bedroom, they found numerous photographs of Mr. Davis, including one showing him kissing a wad of cash. The officers also found various other items in the bedroom bearing Mr. Davis' name.

Mr. Davis was arrested, taken to the police department, and interviewed. He gave a statement admitting that the marijuana and the handgun belonged to him, even specifying that he owned a "nine."[1]

The government indicted Mr. Davis for possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

At trial, Mr. Davis denied that the handgun was his, or that he had ever possessed it. He testified that the gun belonged to his sister. He admitted to

---

[1] A "nine" is slang for 9mm. Mr. Davis made the statement that he "owned a nine" prior to being told what type of weapon had been found in the apartment.

3

possessing the marijuana, and to running into the apartment to hide the marijuana in the light fixture, but denied having anything to do with the gun, claiming that he had initially admitted that the gun was his in order to protect his family. He testified that he feared his family would lose their Section 8 housing, or that his brother's probation would be violated, if his sister was connected to the firearm. Mr. Davis's sister also testified at trial that the gun belonged to her.

Mr. Gordon testified that he had not seen a gun on Mr. Davis. No police officer had seen Mr. Davis possess a gun, either. Mr. Davis argued that he could not have had a gun on him on the day of the arrest because he was wearing baggy shorts, and any gun would have visibly pulled down his shorts. Nonetheless, the jury found Mr. Davis guilty of possessing a firearm as a convicted felon, as well as the lesser included drug offense of possession of marijuana. It acquitted him of the other charges. The district court sentenced Mr. Davis to 120 months' imprisonment.

## II

### A

During the presentation of its case-in-chief, the government sought to introduce the photograph of Mr. Davis kissing the wad of cash. When defense counsel objected that the photograph was unduly prejudicial under Federal Rule of Evidence 403, the government responded that it only intended to use the

photograph to link Mr. Davis to the bedroom ("to show that he occupied the particular room where the marijuana was found"), not as substantive evidence of distribution of marijuana. The district court overruled Mr. Davis's objection, admitted the photograph for the limited purpose of showing ownership of that particular bedroom, and gave a limiting instruction to that effect.[2]

During its closing argument, the government asked the jury to consider the digital scales and the amount of the marijuana for purposes of the trafficking and distribution charges. In response, defense counsel stressed, among other things, the lack of any evidence that Mr. Davis possessed large amounts of cash typically found on drug dealers. The government, in rebuttal, pointed to the picture of Mr. Davis kissing a wad of cash as such evidence: "Mr. Simpkins told you that if we had pictures of the defendant with fives, tens, and twenties, that would be pretty good evidence of distribution. I wonder if he means like this." Defense counsel objected (asserting that "the sole purpose that was admitted into [*sic*] was to show proof of ownership of the room"), but the district court overruled the objection. The government then continued: "This is the defendant. This is a photograph of him that was hanging on the dresser in the bedroom where the marijuana was found. He appears to be smooching a large wad of money. Good evidence of

---

[2] The government presented this evidence prior to Mr. Davis taking the stand and admitting that he possessed the marijuana. As the government stated in its closing remarks, it did not know ahead of time that Mr. Davis would admit possession, and so it "had to assume that we would need to show you other evidence establishing his connection to that room."

distribution." The government then proceeded to discuss the charge of distribution generally.

Mr. Davis challenges these closing remarks, arguing that they constitute prosecutorial misconduct. He also contests his felon-in-possession conviction based upon these comments, arguing that they improperly insinuated that he had the propensity to deal drugs, and that because of the close association between drugs and guns, that insinuation infected the jury's proper consideration of the evidence regarding possession of the handgun.

## B

We review a claim of prosecutorial misconduct *de novo*. *See United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006). To establish prosecutorial misconduct, "(1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *Id*. "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." *United States v. Wilson*, 149 F.3d 1298, 1301 (11th Cir. 1998).

The remarks to which Mr. Davis objects were improper. The district court admitted the photograph solely for the purpose of establishing a connection between Mr. Davis and the bedroom. The district court specifically relied on the government's assurance that the photograph was not being introduced as

6

substantive evidence of marijuana distribution, and it gave a limiting instruction to that effect. *See* D.E. 70 at 74. As a result, there was no basis for using the photograph as substantive evidence of distribution.

Mr. Davis, however, was acquitted on the charge of possession with the intent to distribute. The improper use of the photograph (to suggest that Mr. Davis made lots of money by selling drugs) would seemingly only matter if the jury had convicted Mr. Davis of distribution. Because it did not, we cannot say that Mr. Davis's substantial rights were prejudiced at all. [3]

But Mr. Davis also argues a more indirect, and more complicated, prejudice to his substantial rights. He essentially asserts that, because there is a significant connection between drugs and guns, a jury might consider evidence that a defendant made money by selling drugs as evidence that the defendant possessed a gun. Here, according to Mr. Davis, where the jury had conflicting evidence concerning the gun possession charge, the improper remarks concerning drug distribution may have wrongly led the jury to convict on the former charge.

It is true that courts must be cautious when assessing the impact of improperly introduced evidence of crimes, because there can be a risk "that a jury

---

[3] We also reject the assertion that the remarks constituted inadmissible character evidence. *See* Fed. R. Evid. 404. The government made the remarks for the specific (albeit improper) purpose of demonstrating that Mr. Davis made money through the distribution of drugs. It did not make the remarks, as Mr. Davis claims, to show that Mr. Davis had the general proclivity to deal drugs, or that he had "bad character," or that the evidence of distribution made it more likely that he committed a different crime in question.

will convict for crimes other than those charged – or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment." *Old Chief v. United States*, 519 U.S. 172, 181 (1997). And courts have often noted the close nexus between guns and drugs. *See, e.g., United States v. Thomas*, 242 F.3d 1028, 1032 (11th Cir. 2001) ("the evidence of his drug trafficking was . . . relevant to proving that he knowingly possessed the weapons").

In this case, though, we are not persuaded that Mr. Davis has established that his substantial rights were prejudiced or that there is a reasonable probability that the outcome of the case would have been different. First, as in *Thomas*, the usual challenge is to the use of the evidence of both the distribution *and* the possession of drugs in inferring the knowing possession of a firearm. *See id*. Courts normally discuss "distribution" and "possession" of drugs in the same manner when connecting them to weapons. But here, Mr. Davis can only challenge the evidence of the distribution of drugs, not that of the possession of drugs, because he admitted to possessing the drugs. In other words, in order to succeed in this argument, Mr. Davis must necessarily rely on the "nexus" between guns and drugs. But, because he admitted possession, the jury could have reasonably inferred that because Mr. Davis possessed drugs, he also possessed the handgun. Assuming that it would be improper for the jury to rely on evidence of drug *distribution* to infer that Mr. Davis possessed the handgun, we would still have to determine that the

8

jury *did not* rely on evidence of *possession* in inferring that Mr. Davis possessed the handgun. And because we are required to construe all inferences in favor of the jury verdict, that seems to us to be a bridge too far.

In addition, there was at least some evidence (for example, the digital scales) of drug distribution. Although the jury was free to reject that evidence, or to conclude that it failed to establish guilt of distribution beyond a reasonable doubt, we cannot conclude, *even assuming* that the jury relied on evidence of drug distribution to infer possession of the handgun, that it relied on the government's closing remarks, rather than the permissible distribution evidence properly admitted at trial.

### III

Mr. Davis also argues that there was insufficient evidence to support his felon-in-possession conviction. He argues that, although he initially admitted to possessing the handgun found in the apartment, he cannot be convicted on the basis of that post-arrest admission alone. And he maintains that there is insufficient evidence aside from that initial admission to sustain the conviction.

When a defendant fails to move for judgment of acquittal at the close of evidence, as is the case here, we review the sufficiency of the evidence for a manifest injustice, which requires a finding that the evidence on a key element of

9

the offense is so tenuous that a conviction would be shocking. *See United States v. Tapia*, 761 F.2d 1488, 1491-92 (11th Cir. 1985).

We acknowledge that Mr. Davis' confession that he owned the handgun, standing alone, is insufficient to convict him. *See United States v. Green*, 873 F.3d 846, 853 (11th Cir. 2017) ("a confession must be corroborated in order to sustain a conviction; a defendant cannot be convicted solely on the basis of his own admission"). But "extrinsic evidence of a corroborative nature can be used to establish the admission's credibility." *Id*. And we must view the evidence in the light most favorable to the government, and draw all reasonable inferences and credibility determinations in favor of the jury's guilty verdict. *See United States v. Holt*, 777 F.3d 1234, 1259 (11th Cir. 2015). Here, under this standard of review, we conclude there was sufficient corroborating extrinsic evidence.

The evidence introduced by the government established that Mr. Davis fled inside the apartment when he saw the police. The officers pursued him inside, through the kitchen, and into the living room, where they arrested him. They found the handgun in a trashcan located in the kitchen. Although Mr. Davis did not live at the apartment, he was the only person in the apartment when the police entered it. Thus, the government's theory that Mr. Davis deposited the handgun in the kitchen trashcan when he passed through the kitchen has some support. Additionally, the government argued that Mr. Davis's story lacked credibility. Although Mr. Davis

10

claimed to run into the house to hide marijuana, not the handgun, it is at least questionable whether he had enough time to enter the bedroom, hide the marijuana in the light fixture, and then return to the living room, in the limited amount of time it took the officers to reach the living room.[4]

Mr. Davis points out that nobody witnessed him possess the firearm. His friend, Mr. Gordon, testified that he did not see Mr. Davis carrying any gun, and that he would have noticed one because Mr. Davis was wearing baggy basketball shorts, which would have been pulled down by the weight of a gun. Nor did any police officer see Mr. Davis carrying a gun. Mr. Davis's fingerprints were not found on the gun, Mr. Davis did not live at the apartment where the gun was discovered, and the gun was not registered to Mr. Davis.

Mr. Davis testified at trial that his initial admission to the police that the handgun belonged to him was untrue, stating "I just took the gun charge because I didn't want my mother and my sister to get into trouble. It was my sister's gun." Mr. Davis' sister also took the stand and testified that the gun belonged to her, and not to Mr. Davis. She testified that she purchased the handgun for protection because of her neighborhood's high crime rate.

---

[4] Mr. Davis argued, in similar but reverse fashion, that he did not have enough time, while running through the kitchen, to not just deposit the handgun into the trash can, which was behind the kitchen door, but to bury it beneath enough trash to make it not visible.

The jury was free, however, to reject both Mr. Davis' and his sister's testimony. *See United States v. Wright*, 392 F.3d 1269, 1274 (11th Cir. 2004) (stating "[a]ssessing the credibility of [a] witness is within the jury's exclusive province," and noting that the jury was free to disregard defendant's father's testimony that the gun found in the defendant's car belonged to him). As in *Wright*, "[b]ased on the jury's verdict, it is evident that it did not give much credence to the testimony of [Mr. Davis's sister]." *Id*. It is not an appellate court's role to displace a jury's credibility determinations with its own, and "all reasonable inferences and credibility choices must be in favor of the jury verdict." *Id*. As long as there was extrinsic evidence enough to establish the credibility of Mr. Davis's initial admission, the jury could accept that admission and reject contrary testimony. Thus, Mr. Davis has failed to show any manifest injustice in his conviction.

## IV

Finally, Mr. Davis argues, for the first time on appeal, that the district court improperly increased his base offense level at sentencing when it considered two prior Georgia aggravated assault convictions that he maintains do not constitute crimes of violence under the Sentencing Guidelines. When a defendant makes no objection to his sentence before the district court, but instead raises the objection for the first time on appeal, we review the sentence for plain error. *See United States v. Ramirez-Flores*, 743 F.3d 816, 821 (11th Cir. 2014). "To prevail under

12

the plain error standard, an appellant must show: (1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings." *Id*. at 822.

Here there is no error, plain or otherwise. This Court very recently held that the elements of Georgia aggravated assault are the same as the elements of generic aggravated assault, and thus Georgia aggravated assault qualifies as a crime of violence under the enumerated clause of the career offender definition of the Sentencing Guidelines. *See United States v. Morales-Alonso*, 878 F.3d 1311, 1320 (11th Cir. 2018).

## V

For these reasons, we affirm Mr. Davis' convictions and sentence.

**AFFIRMED.**

13